**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATHAN K.,[1] | ) Case No. CV 18-3518-JPR |
| Plaintiff, | ) |
| | ) MEMORANDUM DECISION AND ORDER |
| v. | ) AFFIRMING COMMISSIONER |
| | ) |
| ANDREW SAUL, Commissioner | ) |
| of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

## I.  PROCEEDINGS

Plaintiff seeks review of the Commissioner's final decision denying his application for Social Security disability insurance benefits ("DIB").  The parties consented to the jurisdiction of the undersigned under 28 U.S.C. § 636(c).  The matter is before the Court on the parties' Joint Stipulation, filed August 27,

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Andrew Saul is substituted in as the correct Defendant. See Fed. R. Civ. P. 25(d).

1

2019, which the Court has taken under submission without oral argument.  For the reasons stated below, the Commissioner's decision is affirmed.

## II.  BACKGROUND

Plaintiff was born in 1986.  (Administrative Record ("AR") 464.)  He has a high-school education and attended some college. (AR 336, 1021.)  He last worked as an internet sales manager at a car dealership, a security officer, and a salesperson.  (AR 336-39, 485.)  On October 21, 2016, he applied for DIB, alleging that he had been unable to work since October 23, 2015, because of depression, anxiety, ADHD, "ankylosing spondylitis,"[3] and type-two bipolar disorder.  (AR 464, 484.)  After Plaintiff's application was denied (AR 379, 382-83), he requested a hearing before an Administrative Law Judge (AR 390-91).  A hearing was held on November 21, 2017, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. (AR 331-68.)  In a written decision issued December 22, 2017, the ALJ determined that he was not disabled.  (AR 15-28.)  On March 22, 2018, the Appeals Council denied his request for review. (AR 1-5.)  This action followed.

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and

---

[3] Ankylosing spondylitis is a type of arthritis that causes pain, stiffness, and inflammation in the spine.  See Ankylosing Spondylitis (AS), WebMD, https://www.webmd.com/arthritis/ what-is-ankylosing-spondylitis#1 (last visited Sept. 25, 2019).

supported by substantial evidence based on the record as a whole. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is "more than a mere scintilla but less than a preponderance." Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

**IV. THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied.  § 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied.  § 404.1520(a)(4)(ii), (c).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  § 404.1520(a)(4)(iii), (d).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[4] to perform

---

[4] RFC is what a claimant can do despite existing exertional and nonexertional limitations.  § 404.1545(1); see Cooper v.
(continued...)

his past work; if so, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy, the fifth and final step of the sequential analysis. §§ 404.1520(a)(4)(v), 404.1560(b); Drouin, 966 F.2d at 1257.

B.    The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff met the insured status requirements through December 31, 2020, and had not engaged in substantial gainful activity since October 23, 2015. (AR 17.) At step two, she determined that he had the severe impairments of "bipolar affective disorder, depressed, without psychotic features; generalized anxiety disorder; attention deficit disorder (ADHD), predominantly inattentive type; ankylosing spondylitis; and cervical spine degenerative disc disease." (Id.)

At step three, she determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing. (AR 18-20.) At step four, she found that Plaintiff had the RFC to perform light work with additional limitations:

---

[4] (...continued)
Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[he] can occasionally lift and/or carry 20 pounds and
frequently lift and/or carry 10 pounds; occasionally
climb ramps and stairs; never climb ladders, ropes, or
scaffolds; occasionally stoop, kneel, crouch, and crawl;
and can perform simple, routine tasks without any contact
with the public, and only occasional, superficial contact
with coworkers.

(AR 20.)  Based on the testimony of the vocational expert, the
ALJ concluded that Plaintiff was unable to perform his past
relevant work.  (AR 26.)

At step five, considering Plaintiff's age, education, work
experience, and RFC and the VE testimony, she found that
Plaintiff could perform several jobs existing in significant
numbers in the national economy.  (AR 27.)  Accordingly, she
found him not disabled.  (AR 27-28.)

**V.  DISCUSSION**[5]

Plaintiff contends that the ALJ erred in assessing the
opinion of his treating psychologist and in evaluating his
subjective symptom statements.  (J. Stip. at 4-14, 16-20.)  For
the reasons discussed below, remand is not warranted on either

---

[5] In Lucia v. SEC, 138 S. Ct. 2044, 2055 (2018), the Supreme
Court held that ALJs of the Securities and Exchange Commission
are "Officers of the United States" and thus subject to the
Appointments Clause.  To the extent Lucia applies to Social
Security ALJs, Plaintiff has forfeited the issue by failing to
raise it during his administrative proceedings.  (See AR 331-68,
458); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (as
amended) (plaintiff forfeits issues not raised before ALJ or
Appeals Council); see also Kabani & Co. v. SEC, 733 F. App'x 918,
919 (9th Cir. 2018) (rejecting Lucia challenge because plaintiff
did not raise it during administrative proceedings), cert.
denied, 139 S. Ct. 2013 (2019).

basis.

A. <u>The ALJ Gave a Specific and Legitimate Reason for</u>
<u>Discounting the Opinion of Plaintiff's Treating</u>
<u>Psychologist</u>

Plaintiff argues that the ALJ improperly discounted the
April 2017 opinion of his treating psychologist that his mental
impairments resulted in many extreme and marked functional
limitations that prevented him from working. (<u>See</u> J. Stip. at 4-
14.) As explained below, however, the ALJ appropriately found
that Dr. Bell's opinion merited "little weight." (AR 24.)

1. <u>Applicable law</u>

Three types of physicians may offer opinions in Social
Security cases: those who directly treated the plaintiff, those
who examined but did not treat the plaintiff, and those who did
neither. <u>See</u> <u>Lester</u>, 81 F.3d at 830. A treating physician's
opinion is generally entitled to more weight than an examining
physician's, and an examining physician's opinion is generally
entitled to more weight than a nonexamining physician's. <u>See</u>
<u>id.</u>; § 404.1527(c)(1).[6]

_____

[6] For claims filed on or after March 27, 2017, the rules in
§ 404.1520c (not § 404.1527) apply. <u>See</u> § 404.1520c (evaluating
opinion evidence for claims filed on or after Mar. 27, 2017).
The new regulations provide that the Social Security
Administration "will not defer or give any specific evidentiary
weight, including controlling weight, to any medical opinion(s)
or prior administrative medical finding(s), including those from
your medical sources." <u>Id.</u> § 404.1520c(a). Thus, the new
regulations eliminate the term "treating source" as well as what
is customarily known as the treating-source or treating-physician
rule. <u>See</u> <u>id.</u> Plaintiff's claim was filed before March 27,
2017, and the Court therefore analyzes it under the treating-
(continued...)

This is so because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight. § 404.1527(c)(2). If it is not given controlling weight, its weight is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, amount of evidence supporting the opinion, consistency with the record as a whole, the doctor's area of specialization, and other factors. § 404.1527(c)(2)-(6).

When a physician's opinion is not contradicted by other evidence in the record, it may be rejected only for a "clear and convincing" reason. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). When a doctor's opinion is contradicted, the ALJ must provide only a "specific and legitimate reason" for discounting it. Id. (citing Lester, 81 F.3d at 830-31). The weight given an examining physician's opinion, moreover, depends on whether it is consistent with the record and accompanied by adequate explanation, among other things. § 404.1527(c)(3)-(6). Furthermore, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is

---

[6] (...continued)
source rule set out in § 404.1527.

brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).

### 2. Relevant background

#### a. *Plaintiff's treating doctors*

Plaintiff was treated on and off at Azimuth Mental Health from May 26, 2015, through June 21, 2017, totaling almost 20 visits.[7] (AR 721-31, 957-60.) His initial psychiatric evaluation, in May 2015, listed his "current symptoms" as depressed mood, poor concentration, and "altered" attention span. (AR 729.) But he had no fatigue, impairment in functioning, anxiety, racing thoughts, or many other symptoms. (Id.) He slept seven hours a day. (Id.) Mental-status-examination results — including appearance, behavior, speech, level of consciousness, affect, thought processes, perception, orientation, cognition, judgment, and insight — were all normal or appropriate. (AR 730-31.) As to "thought content," someone wrote "see form" (AR 730), but no such attachment is in the record. He was diagnosed with bipolar disorder and was taking Lamictal.[8] (AR 728, 731.) At all subsequent visits, his mental-

---

[7] The treatment notes from Azimuth do not list a provider, but the index in the Administrative Record indicates that they are from "Azimuth Mental Health Assoc." (See also AR 720.)

[8] Lamictal is an antiepileptic medication that is also used to prevent mood swings in adults with bipolar disorder. See Lamictal Tablet, WebMD, https://www.webmd.com/drugs/2/ drug-8486-7217/lamictal-oral/lamotrigine-oral/details (last visited Sept. 25, 2019).

status-examination results remained within normal limits for all areas assessed. (See AR 721-25, 727, 957-60.) Treatment notes state that by December 21, 2015, he was "doing much better." (AR 724.) On January 20, 2016, his anxiety had increased, but in April and July 2016 he was "doing well." (AR 722-23.)

Plaintiff was admitted to an outpatient treatment program at Community Hospital from February 12 through April 26, 2016, where he attended group therapy, activity therapy, and training and education sessions. (J. Stip. at 7; AR 556-719.) Treatment notes from group therapy indicate that his mood was generally depressed and anxious as well as sometimes labile, guarded, or irritable or sad, always with a congruent affect. (See, e.g., AR 558-59, 570-71, 592-94, 607, 609, 623-24, 640-41, 653-55, 666-69, 690-92, 710-12.) He actively participated in the therapy, was focused, and responded well to the discussions. (See, e.g., AR 556, 558, 574, 592, 599, 607, 623-24, 650.) His cognitive behavior during the sessions was generally alert and oriented and was frequently "appropriate" and "problem solving." (See, e.g., 574, 589, 593-94, 598-600, 603, 611-15, 629-31, 650-51, 667-69, 699.)

At an individual consultation on March 29, 2016, a registered nurse noted that Plaintiff was "making progress" and that he had recently started taking Vistaril, which was helping his anxiety "throughout the day."[9] (AR 649.) During therapy in

_____

[9] Vistaril is an antihistamine that is also used short-term to treat anxiety. See Vistaril, WebMD, https://www.webmd.com/drugs/2/drug-6144/vistaril-oral/details (last visited Sept. 25, 2019).

April 2016, he shared that he was able to go out with friends, was laughing with the group, and was using coping skills he had learned to manage stress. (AR 699-701.) He also noted meeting his goal of attending a family dinner and feeling good about his discharge from the program because he had made "lots of progress." (AR 714.)

Plaintiff saw psychologist Vera Bell for regular weekly visits beginning in June 2015 through at least April 2017. (AR 732-37, 871-74, 886-953.) Her treatment notes indicate that he generally complained of depression, mood swings, and anxiety and occasionally of isolation, anger, problems with his attention span, or physical pain. (See AR 887-953.) Dr. Bell's mental-status-examination notes show that he usually had normal appearance, thought process, and speech but impaired concentration, a depressed and anxious mood, and labile affect. (See id.) In July 2015, she twice checked a box indicating that he had delusions. (AR 891-92.) And in May 2016, she noted his rapid speech. (AR 932.) Her treatment plan was consistently the same during the course of his treatment — that he continue with outpatient cognitive psychotherapy and see a psychiatrist or specialist for medication. (See AR 887-953.)

On November 26, 2016, Dr. Bell completed a mental-disorder questionnaire about him, noting that his chief complaints were shakes, inability to sleep, depression, crying easily, anxiety, headaches, upset stomach, mood swings, poor concentration, and anger. (AR 733-37.) She assessed his current mental status as depressed; easily discouraged, upset, and distracted; and "extremely dependent." (AR 734-35.) He had a negative attitude

11

and mood swings, but he was oriented to time, place, and person, with no delusions, hallucinations, or paranoid thoughts. (Id.) In assessing his current level of functioning, Dr. Bell explained that he needed "constant assistance from his parents" with money, paying bills, and maintaining his residence; he had trouble communicating with his father and lacked motivation; he took a long time to complete tasks because of trouble focusing and following directions; and he had lost jobs because of his "disability." (AR 735-36.) She opined that he was unable to work. (AR 737.) She indicated that he was taking Lamictal and bupropion and that he frequently changed his medications.[10] (AR 737.)

On April 15, 2017, Dr. Bell completed a medical-source statement concerning Plaintiff's ability to do work-related activities. (AR 868-70.) She assessed him with "[e]xtreme" limitations in the following areas: making judgments on simple and complex work-related decisions, performing at a consistent pace without more than regular breaks in a workday, interacting appropriately with supervisors and coworkers, sustaining an ordinary routine without special supervision, and responding appropriately to changes in a routine work setting.[11] (AR 868-

---

[10] Bupropion treats depression by helping restore the balance of neurotransmitters in the brain. See Bupropion Hcl, WebMD, https://www.webmd.com/drugs/2/drug-13507-155/bupropion-hcl-oral/bupropion-oral/details (last visited Sept. 25, 2019).

[11] The assessment form defines an "[e]xtreme" limitation as "major," with "no useful ability to function in th[at] area." (AR 868.) A "[m]arked" limitation "seriously interferes with the
(continued...)

12

69.)  He had "[m]arked" limitations in carrying out short, simple

instructions; understanding, remembering, and carrying out

detailed instructions; and maintaining attendance and punctuality

during a workday and workweek.  (Id.)  He had "[m]oderate"

limitations in interacting appropriately with the public and

"[s]light" limitations in understanding and remembering short,

simple instructions.  (Id.)  Mental-status-examination results

from that day indicate that he was easily discouraged, upset, and

distracted and unable to find a way of resolving his emotional

issues.  (AR 872.)  But he was cooperative, pleasant, and

oriented to time, place, and person.  (Id.)

On April 5, 2017, Plaintiff was admitted to a 14- to 21-day

"partial hospitalization" outpatient program at College Hospital,

where he complained of increased depression, anxiety,

distraction, and trouble sleeping.  (AR 1021-22, 1110.)  He

stated that he was "constantly depressed" because his "fiancee

left" and he was having "financial issues."  (AR 1052.)  He

reported taking Wellbutrin, Lamictal, and Latuda.[12]  (AR 1021.)

---

[11] (...continued)
ability to function independently, appropriately, effectively,
and on a sustained basis."  (Id.)  A "[m]oderate" limitation is
"signifcant" and means that "[d]eficiencies could not be ignored
by a supervisor, coworker, peer, or the public."  (Id.)  And a
"[s]light" limitation means "some mild limitations . . . but the
individual can generally function well."  (Id.)

[12] Wellbutrin is name-brand bupropion.  See Wellbutrin,
WebMD, https://www.webmd.com/drugs/2/drug-13509/wellbutrin-oral/
details (last visited Sept. 25, 2019).  Latuda is used to treat
certain mood disorders, such as schizophrenia or depression
associated with bipolar disorder.  See Latuda, WebMD, https://
www.webmd.com/drugs/2/drug-155134/latuda-oral/details (last
(continued...)

13

Psychiatrist James Pratty performed a psychiatric and mental-status examination when Plaintiff was admitted, and results show that he was within normal limits in all categories except that his mood was "slightly anxious and depressed" and he had "mild to moderate ease of distractibility." (AR 1021-22.) He diagnosed bipolar affective order, depressed, without psychotic features, cannabis dependence, methamphetamine dependence, generalized anxiety disorder, and ADHD.[13] (AR 1022.)

Dr. Pratty made progress notes every few days during Plaintiff's treatment at College Hospital, and they indicate that he remained somewhat anxious and preoccupied and "at times" was "somewhat easily overwhelmed." (See AR 1064-65, 1073, 1076, 1080, 1085, 1089, 1096.) But he was sleeping "reasonably well" (AR 1064, 1073, 1080, 1089, 1096) and was "oriented to person, place, time and purpose" (AR 1065, 1076, 1085, 1093). On April 21, 2017, a therapist conducted a "psychosocial evaluation" and concluded that he "ha[d] adequate functioning and [would] benefit from [the] program by learning coping skills, medication, [and] symptom management." (AR 1042.) Plaintiff was discharged from the program on May 5, 2017, at his own request, and records show he was deemed "non-compliant with attendance." (AR 1020, 1106.)

b. *Examiners and reviewers*

---

[12] (...continued)
visited Sept. 25, 2019).

[13] The ALJ found that Plaintiff's statements at the hearing and in the record about methamphetamine and cannabis use established that any impairments from dependence on those substances were "nonsevere." (AR 18.) Plaintiff has not challenged that finding.

On February 10, 2016, psychologist Robert J. Craig performed a "Millon Clinical Multiaxial Inventory II/III" on Plaintiff. (AR 859-66.)  His report noted "mild" cognitive dysfunction and depression that were not enough to impair daily functioning and "[p]ossible" diagnoses of generalized anxiety, dysthymic, and other disorders.  (AR 862, 864-65.)

On January 3, 2017, consulting psychiatrist Ernest A. Bagner performed a complete psychiatric evaluation of Plaintiff, who complained of depression, anxiety, ADHD, mood swings, low motivation and energy, and feelings of helplessness and hopelessness.  (AR 790-94.)  He indicated that he was taking Wellbutrin, Lamictal, Adderall, and Seroquel.[14]  (AR 791.) Mental-status-examination results show that he was within normal or appropriate limits in all areas except that his mood was a "little sad."  (AR 792-93.)  Dr. Bagner diagnosed attention deficit disorder and bipolar disorder in remission, with a GAF score of 70.[15]  (AR 793.)  He assessed Plaintiff with no

_____

[14] Adderall is a stimulant used to treat ADHD.  See Adderall, WebMD, https://www.webmd.com/drugs/2/drug-63163/ adderall-oral/details (last visited Sept. 25, 2019).

Seroquel is used to treat certain mental or mood conditions, such as schizophrenia, bipolar disorder, or sudden episodes of mania or depression associated with bipolar disorder.  See Seroquel, WebMD, https://www.webmd.com/drugs/2/drug-4718/ seroquel-oral/details (last visited Sept. 25, 2019).

[15] GAF scores assess a person's overall psychological functioning on a scale of 1 to 100.  See Diagnostic and Statistical Manual of Mental Disorders 32 (revised 4th ed. 2000). A GAF score of 61 to 70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally
(continued...)

15

functional limitations at all.  (Id.)

On February 13, 2017, Dr. L. Mallare reviewed Plaintiff's medical history and diagnosed him with ADHD and depressive, bipolar, and related disorders.[16]  (AR 374.)  He found only mild limitations in all areas of functioning.  (AR 375.)

### 3. Analysis

Unlike Dr. Bell, Drs. Bagner and Craig assessed Plaintiff with no functional limitations (AR 793, 864-65), and the ALJ assigned Dr. Bagner's opinion "[g]reat weight" (AR 23).[17] Because Dr. Bell's April 2017 opinion was contradicted, the ALJ needed to provide only a "specific and legitimate reason" for

---

[15] (...continued) functioning pretty well, has some meaningful interpersonal relationships."  Id. at 34.  The Commissioner has declined to endorse GAF scores, Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50764-65 (Aug. 21, 2000) (codified at 20 C.F.R. pt. 404) (GAF score "does not have a direct correlation to the severity requirements in our mental disorders listings"), and the most recent edition of the DSM "dropped" the GAF scale, citing its lack of conceptual clarity and questionable psychological measurements in practice, DSM-V at 16 (5th ed. 2013).  Because GAF scores continue to be included in claimant medical records, however, the Social Security Administration has clarified that they are "medical opinion evidence under 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2) if they come from an acceptable medical source." Wellington v. Berryhill, 878 F.3d 867, 871 n.1 (9th Cir. 2017) (citation omitted).  Here, the ALJ gave "little weight" to the GAF ratings in the record.  (AR 25.)

[16] Dr. Mallare used a medical-specialty code of "37" (see AR 374), which indicates that he is a psychiatrist.  See Soc. Sec. Admin. Program Operations Manual System (POMS) DI 24501.004, https://secure.ssa.gov/apps10/poms.nsf/lnx/0424501004 (last updated May 5, 2015).

[17] The ALJ rejected Dr. Craig's "'possible' diagnoses" but did not evaluate his finding that Plaintiff's "daily functioning" was not impaired.  (AR 22.)

discounting it.  See Carmickle, 533 F.3d at 1164 (citing Lester, 81 F.3d at 830-31).  As explained below, she did so, and remand is not warranted on this basis.

### a. *Inconsistency with record evidence*

The ALJ found that Dr. Bell's April 2017 opinion was "generally inconsistent with the evidence of record as a whole," including mental-status examinations from Azimuth Mental Health and Dr. Bagner and with Dr. Bell's own progress notes.  (AR 24.) Inconsistency with the medical evidence, including a doctor's own treatment notes, is a specific and legitimate reason to discount a treating physician's opinion.  See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (physician's opinion was properly rejected when his own treatment notes "provide[d] no basis for the functional restrictions he opined should be imposed on [plaintiff]"); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ permissibly rejected physician's opinion when it was "implausible" and "not supported by any findings made by any doctor," including herself).

The records from Azimuth indicate that at each of nearly 20 visits spanning a 25-month period, including those noted by the ALJ, Plaintiff's mental-status-examination results were within normal limits.[18]  (See AR 22-23 (citing AR 721-25); AR 727, 729,

---

[18] Plaintiff complains that the ALJ gave an incorrect citation to the Azimuth records containing normal results of his mental-status examinations.  (J. Stip. at 12.)  But that typographical error has no significance because, as he concedes, the test results were normal at all his visits to Azimuth,
(continued...)

17

957-60.)  And as the ALJ pointed out, Dr. Bagner's January 3,
2017 psychiatric evaluation also showed entirely normal mental-
status-examination results except that Plaintiff's mood was a
"little sad."  (AR 23 (citing 792-93).)  Similarly, Dr. Craig's
February 2016 assessment found only mild cognitive dysfunction
and impairment, with Plaintiff reporting no impact on his daily
functioning.  (AR 865.)  Thus, the ALJ appropriately discounted
Dr. Bell's April 2017 opinion as inconsistent with the largely
normal mental-status-examination results of record.  See Shultes
v. Berryhill, 758 F. App'x 589, 591-92 (9th Cir. 2018) (finding
that ALJ appropriately rejected two doctors' opinions of
claimant's functional limitations because they were inconsistent
with normal mental-status-examination results); Scott v.
Berryhill, No. C17-1452-JPD, 2018 WL 2298638, at *6 (W.D. Wash.
May 21, 2018) (inconsistency between doctor's opinion of
plaintiff's severe and marked functional limitations and
longitudinal record showing mostly normal mental-status
examinations was specific and legitimate reason for rejecting
that opinion).  Indeed, no other doctor assessed mental
limitations even approaching Dr. Bell's.

The ALJ noted much other evidence that is inconsistent with
the severe functional limitations assessed by Dr. Bell.  (See AR
19, 22-26.)  For example, Plaintiff reported to Dr. Craig in
February 2016 that he was having only "some mild signs of
depression" that were not "severe enough to impair his daily

---

[18] (...continued)
spanning well before and after his outpatient "hospitalizations."
(See AR 721-25, 727, 729, 730-31, 957-60.)

18

functioning." (AR 22 (citing AR 859-66).) Mental-status-examination results during his treatment at Community Hospital show that even when depressed and anxious, he was well-oriented and had adequate judgment, intact memory, good eye contact, clear speech, a neat and clean appearance, and no hallucinations or delusions. (AR 22 (citing AR 575-78).) And in January 2017, Dr. Bagner assessed Plaintiff with no functional limitations at all. (AR 23 (citing AR 790-96).) The inconsistency between this evidence and Dr. Bell's opinion of Plaintiff's many extreme or marked functional limitations was a specific and legitimate reason for discounting that opinion. See Maestas v. Berryhill, 692 F. App'x 868, 869 (9th Cir. 2017) (finding doctor's opinion assessing functional limitations inconsistent with treatment notes and objective findings that were within normal limits, which was specific and legitimate reason for assigning it "little weight"); Baker v. Colvin, Case No.: 16-cv-01048-CAB(JMA), 2017 WL 2889302, at *10-11 (S.D. Cal. July 7, 2017) (ALJ properly discounted treating psychiatrist's opinion on plaintiff's mental limitations as inconsistent with clinical findings by examining psychiatrist, who found no significant cognitive defects), accepted by 2017 WL 3457189 (S.D. Cal. Aug. 11, 2017).

The ALJ also permissibly discounted Dr. Bell's opinion on Plaintiff's mental limitations because it was inconsistent with her own progress notes. (AR 24); see Connett, 340 F.3d at 875 (treating physician's opinion properly rejected when treatment notes "provide[d] no basis for the functional restrictions he opined should be imposed on [claimant]"); Rollins, 261 F.3d at 856 (ALJ properly rejected treating physician's opinion that was

19

contradicted by or inconsistent with treatment reports).  As she explained, Dr. Bell's "progress notes since 2015 indicat[e that Plaintiff] was generally within normal limits on all of his mental status examinations, with the exception of a depressed, labile, and anxious mood."  (AR 24 (citing AR 886-953).)  Yet Dr. Bell assessed him in April 2017 as entirely unable to function in seven areas, including making judgments on even "simple work-related decisions" and having any appropriate interaction at all with coworkers.  (See AR 868-89.)  Her progress notes hardly suggest that level of functional restriction.

Plaintiff contends that Dr. Bell's progress notes were not generally within normal limits and thus support the functional limitations she assessed in April 2017.  (J. Stip. at 9-11.)  But all of her progress notes during the relevant period indicate at most that he was anxious and depressed, with a labile affect and sometimes impaired concentration.  (See AR 733-37, 871-74, 886-953.)  The ALJ noted these impairments and accounted for them in the RFC, limiting him to simple, routine tasks, no contact with the public, and limited contact with coworkers, findings he does not challenge.  (AR 20, 26); see Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (finding that ALJ properly translated moderate mental limitations assessed by one doctor into "concrete restriction[]" of limitation to "simple tasks"); Schaefer v. Colvin, No. 6:13-cv-00157-JE., 2014 WL 468915, at *7-8 (D. Or. Feb. 3, 2014) (finding RFC limiting plaintiff to work requiring no close contact with general public, only occasional interaction with coworkers, and no more than simple, repetitive tasks adequately accounted for his mental impairments, including

depression, anxiety, and cognitive disorder). As Plaintiff

notes, Dr. Bell twice indicated that he was having delusions.

(J. Stip. at 11 (citing AR 891-92 (July 13 and 21, 2015 progress

notes)).) But those alleged delusions happened several months

before the October 23, 2015 onset date and never resumed. See

Carmickle, 533 F.3d at 1165 (opinion issued before onset date is

of "limited relevance").[19]

Plaintiff further contends that the ALJ failed to consider

the entire record and ignored other evidence showing that his

condition had at times deteriorated, including records from his

treatment at Community and College hospitals. (J. Stip. at 7-8,

11-12.) He is correct that an ALJ must "review the

administrative record as a whole, weighing both the evidence that

supports and the evidence that detracts from the Commissioner's

conclusion." Reddick, 157 F.3d at 720. But the ALJ did so here.

She gave a detailed recitation of the mental-health evidence and

carefully considered all of it. (See AR 19-26.) Indeed, she

explicitly weighed treatment notes from his participation in the

programs at both hospitals. (See AR 22 (citing AR 575-78), 24-25

(citing AR 1021-22).) Although the notes from College Hospital

indicated that he was anxious, depressed, and distracted, mental-

status-examination results from there were generally within

---

[19] Moreover, as Defendant argues (see J. Stip. at 16), the
ALJ was entitled to reject Dr. Bell's opinion to the extent it
was premised on Plaintiff's subjective complaints, which, as
explained below, she properly discounted. See Tonapetyan v.
Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (when ALJ properly
discounted claimant's credibility, he was "free to disregard"
doctor's opinion that was premised on claimant's subjective
complaints).

normal limits.  (See AR 24-25 (citing AR 1021-22).)  Similarly, although he had an anxious mood upon admission to the program at Community Hospital, those mental-status-examination results were all within normal limits also.  (See AR 22 (citing AR 575-78).) Even if Plaintiff had been disabled during those short periods immediately before and when he participated in the outpatient programs, that would not satisfy the 12-month requirement of § 423(d)(i)(A).

To the extent Plaintiff claims the ALJ erred by making a "conclusory statement" that Dr. Bell's opinion was inconsistent with the record as a whole, he is mistaken.  (J. Stip. at 7.)  As explained above, the ALJ pointed to much specific evidence that was inconsistent with Dr. Bell's opinion.  (See AR 19-26.)  That she did not expressly compare and contrast each and every piece of evidence with Dr. Bell's findings is not significant, as the Court may draw logical inferences from the ALJ's opinion.  See Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

b.  *Dr. Bell's conservative treatment*
*recommendations*

The ALJ found that Dr. Bell's "own conservative course of treat[ing]" Plaintiff was another reason for giving her April 2017 opinion little weight.  (AR 24.)  This can be a valid reason to reject a treating provider's opinion.  See Rollins, 261 F.3d at 856.  But it does not apply here.  As Plaintiff points out (J. Stip. 8-9), Dr. Bell provided weekly cognitive psychotherapy for

over two years.[20]  (See AR 737, 886-953.)  The ALJ failed to
explain what additional treatment she, a licensed psychologist
but not a physician, could have provided.  See Tammy L.O. v.
Comm'r, Soc. Sec. Admin., No. 3:17-cv-774-SI, 2018 WL 3090196, at
*10 (D. Or. June 20, 2018) (finding that ALJ erred in rejecting
therapist's opinion as inconsistent with her conservative
treatment of plaintiff when it was unclear that she could have
provided plaintiff with any more intensive treatment).

     In addition, considering the treatment Plaintiff received
from all his providers since the alleged onset in October 2015 —
weekly therapy, psychiatric care, various psychiatric
medications, and two outpatient hospitalizations — his overall
care was not routine or conservative.  See Delores A. v.
Berryhill, No. ED CV 17-254-SP, 2019 WL 1330314, at *6 (C.D. Cal.
Mar. 25, 2019) (finding treatment not conservative when plaintiff
attended monthly psychiatric sessions and took psychotropic
medications); Tammy L.O., 2018 WL 3090196, at *13 (finding that
ALJ erred in characterizing treatment as conservative when
plaintiff was in therapy, took various medications for anxiety
and depression, and underwent three intensive outpatient
hospitalizations).

     Thus, the ALJ's rejection of Dr. Bell's opinion based on her
"conservative course of treatment" for Plaintiff is not supported

---

     [20] Plaintiff claims that Dr. Bell managed his medication.
(See J. Stip. at 9 (citing AR 749, 871, 874).)  But her notes
indicate that a psychiatrist was doing that (see AR 871
("medication management by psychiatrist")), and Plaintiff
previously stated that also (see AR 546 (Dr. Pratty worked with
Plaintiff to monitor and adjust medication)).

by substantial evidence. (AR 24.) But because she stated a valid reason supported by substantial evidence for rejecting it — its inconsistency with other evidence — her erroneous conservative-treatment rationale was harmless.

B.  <u>The ALJ Did Not Err in Discounting Plaintiff's Subjective Symptom Statements</u>

Plaintiff claims that the ALJ failed to articulate a clear and convincing reason for rejecting his testimony about his mental-impairment symptoms. (J. Stip. at 16-20.) As explained below, remand is not warranted on this basis.

1.  <u>Applicable law</u>

An ALJ's assessment of a claimant's allegations concerning the severity of his symptoms is entitled to "great weight." <u>Weetman v. Sullivan</u>, 877 F.2d 20, 22 (9th Cir. 1989) (as amended) (citation omitted); <u>see</u> <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1985) (as amended Feb. 24, 1986). "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989)).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. <u>See</u> <u>Lingenfelter</u>, 504 F.3d at 1035-36; <u>see also</u> SSR 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016).[21] "First, the ALJ must determine whether the claimant has

_____

[21] The Commissioner applies SSR 16-3p to all "determinations and decisions on or after March 28, 2016." Soc.
(continued...)

24

presented objective medical evidence of an underlying impairment [that] 'could reasonably be expected to produce the pain or other symptoms alleged.'" <u>Lingenfelter</u>, 504 F.3d at 1036 (citation omitted).  If such objective medical evidence exists, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the <u>degree</u> of symptom alleged." <u>Smolen</u>, 80 F.3d at 1282 (emphasis in original).

If the claimant meets the first test, the ALJ may discount the claimant's subjective symptom testimony only if she makes specific findings that support the conclusion. <u>See</u> <u>Berry v. Astrue</u>, 622 F.3d 1228, 1234 (9th Cir. 2010).  Absent a finding or affirmative evidence of malingering, the ALJ must provide a "clear and convincing" reason for rejecting the claimant's testimony. <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 493 (9th Cir.

---

[21] (...continued)
Sec. Admin., Policy Interpretation Ruling, SSR 16-3p n.27, https://www.ssa.gov/OP_Home/rulings/di/01/SSR2016-03-di-01.html (last visited Sept. 25, 2019).  Thus, it applies here.  Though the new ruling eliminates the term "credibility" and focuses on "consistency" instead, <u>id.</u>, Plaintiff refers to credibility (<u>see</u> J. Stip. at 18), and much of the relevant case law uses that language too.  But as the Ninth Circuit has clarified, SSR 16-3p

> makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to "evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

<u>Trevizo v. Berryhill</u>, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (as amended) (alterations in original) (quoting SSR 16-3p).

2015) (as amended) (citing Lingenfelter, 504 F.3d at 1036); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014). The ALJ may consider, among other factors, (1) the claimant's reputation for truthfulness, prior inconsistent statements, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties. Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) (as amended); Thomas, 278 F.3d at 958-59. If the ALJ's evaluation of a plaintiff's alleged symptoms is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas, 278 F.3d at 959.

Contradiction with the medical record is a "sufficient basis" for rejecting a claimant's subjective symptom testimony. Carmickle, 533 F.3d at 1161; see also Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (finding that "conflict between [plaintiff's] testimony of subjective complaints and the objective medical evidence in the record" was "specific and substantial" reason undermining statements). But it "cannot form the sole basis for discounting pain testimony." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); Rollins, 261 F.3d at 857 (citing then-current version of § 404.1529(c)(2)).

### 2. Plaintiff's statements

Plaintiff completed a function report on November 15, 2016. (AR 500-08.) He described his "memory and concentration issues"

26

as making it "very hard" for him to be productive.  (AR 500.)
During the day he had coffee, took care of his dog, read, played
instruments, took care of his hygiene, cooked, spent time with
his girlfriend, watched television, and went to bed.  (AR 501.)
He indicated no problems with personal care, such as dressing,
bathing, shaving, feeding himself, or using the toilet.  (Id.)
He needed reminders for hygiene and to take his medicine.  (AR
502.)  He prepared full meals, such as soup, pasta, and chili,
four or five days a week.  (Id.)  He cleaned and did laundry,
yard work, and household repairs.  (Id.)  He drove a car twice a
week when he went out.  (AR 503.)  He shopped in stores one or
two times a week, but he had impulsive spending habits and was
disorganized.  (Id.)  Once a week he went to "others' houses" for
dinner, and once or twice a month he went to his parents' house.
(AR 504.)  His anxiety made social interaction stressful.  (Id.)
He followed written and spoken instructions well, but he had
trouble when criticized.  (AR 505-06.)  He handled stress poorly
and became overly aggressive.  (AR 506.)  Depression and his
physical impairments made sleep difficult.  (AR 507.)

Plaintiff testified at the November 21, 2017 hearing about
the symptoms from his mental impairments that limited his ability
to work.  (AR 340-50.)  His anxiety was so severe that he could
not make phone calls or deal with conflict, and he stopped
working at two jobs because of it.  (AR 340.)  His ADHD caused
concentration problems.  (AR 341-42.)  When he was in a manic
phase of his bipolar disorder he was unpredictable, and when he
was in a depressive state he became unproductive and had trouble
maintaining good hygiene, which made it hard to leave the house.

(AR 341.)  He took bipolar medication, which he was "always
tweaking."  (AR 344.)  At home, he read, went on the internet,
watched television, napped, and stretched.  (AR 345-46.)  He had
lost weight from depression and arthritis pain.  (AR 346.)  His
lawyer observed that during his testimony his hands and legs
shook and his voice trembled from anxiety.  (AR 342, 346.)

       3.  <u>Analysis</u>

Plaintiff claims that the ALJ improperly rejected his
subjective symptom statements because she merely recited
boilerplate and then summarized the medical evidence without
specifically identifying the statements she found not credible or
what evidence undermined them.  (J. Stip. at 16-20.)  As
explained below, however, he is mistaken.  A careful reading of
her decision shows that she outlined specific inconsistencies
between his subjective symptom statements and the objective
medical evidence and his activities of daily living.  (<u>See</u> AR 19,
21-26.)

Plaintiff relies on <u>Brown-Hunter</u> to argue that the ALJ did
not give sufficiently specific reasons for rejecting his
statements.  (J. Stip. at 18-20.)  First, the ALJ did not fully
reject his claims of mental impairments.  Rather, she found his
symptom statements "not entirely consistent" with the evidence,
which indicates that she gave them some weight.  (AR 21.)
Indeed, she tailored the RFC to his claims of poor concentration
and anxiety around people, limiting him to "simple, routine
tasks" and "[no] contact with the public, and only occasional,
superficial contact with coworkers."  (AR 20.)

Second, <u>Brown-Hunter</u> is distinguishable.  In that case, the

ALJ "stated only that she found, based on unspecified claimant testimony and a summary of medical evidence, that 'the functional limitations from the claimant's impairments were less serious than she ha[d] alleged.'" 806 F.3d at 493 (citation omitted). The Ninth Circuit held that the ALJ's analysis was erroneous, noting that it could not "discern the agency's path because the ALJ made only a general credibility finding without providing any reviewable reasons why she found [the claimant's] testimony to be not credible." Id. at 494.

Here, the ALJ did not make "only a general credibility finding without providing any reviewable reasons for doing so." Id. Rather, she carefully outlined how Plaintiff's subjective symptom statements in the November 2016 function report were inconsistent with his activities of daily living and the objective medical records. (See AR 19.) She noted that his statement in the function report that he was self-conscious around family and strangers was inconsistent with his revelation in group therapy just a few months later that he had attended his niece's birthday party at a restaurant and was able "to be around others and engage appropriately." (Id.) Similarly, he told Dr. Bagner in January 2017 that he had a good relationship with family and a fair one with friends. (Id. (citing AR 790-96).) And he acknowledged in his November 2016 function report that he went to nonfamily members' homes once a week for dinner and regularly shopped in stores. (Id. (citing AR 503-04).) The ALJ also found that although he claimed in the report to have reduced memory and concentration, he was able to repeat three digits forward and backward, perform serial sevens and threes, and spell

29

the word "music" forward and backward at his examination with Dr. Bagner. (AR 19 (citing AR 790-96).) This level of specificity, expressly linking specific statements in the function report to particular pieces of inconsistent evidence, is significantly more than the "conclusory statement" and summary of medical evidence found wanting in Brown-Hunter. 806 F.3d at 493.

The ALJ also satisfied Brown-Hunter by discussing Plaintiff's subjective symptom testimony at the hearing and the specific evidence that was inconsistent with it. (See AR 21-26.) She recounted his testimony, then immediately found that the statements were "not entirely consistent with the medical evidence and other evidence in the record, for the reasons explained in this decision." (AR 21.) She then began a detailed explanation of the reasons supporting that conclusion, even using the signpost "[f]or instance" to start the discussion. (AR 21-26.) As explained above in section V.A, she noted (1) the normal mental-status-examination results from Azimuth, Dr. Bagner, Community Hospital, and College Hospital (AR 22-24 (citing AR 575-78, 721-25, 792-93, 1021-22)); (2) his report to Dr. Craig in February 2016 that he was having only "some mild signs of depression" that were not "severe enough to impair his daily functioning" (AR 22 (citing AR 858-66)); and (3) Dr. Bagner's assessment in January 2017 that he had no functional limitations at all (AR 23 (citing AR 790-96)). She then concluded that "[a]s discussed above," Plaintiff's "subjective complaints" were "inconsistent with the medical evidence of record," which did not support "the alleged severity of [his] symptoms." (AR 26.)

Although that portion of the decision could have more

30

clearly linked the contrary evidence to each inconsistent statement, both the structure and substance of it allow the Court to "reasonably discern" the ALJ's path. Despinis v. Comm'r Soc. Sec. Admin., No. 2:16-cv-01373-HZ, 2017 WL 1927926, at *6-7 (D. Or. May 10, 2017) (finding claimant's reliance on Brown-Hunter "unavailing" for similar reason); see also Fisher v. Berryhill, No. 1:17-cv-01189-GSA, 2018 WL 5979457, at *8 (E.D. Cal. Nov. 14, 2018) (distinguishing Brown-Hunter when "ALJ did not simply summarize medical records but considered the interaction between the medical evidence of record and Plaintiff's corresponding pain and dysfunction"); Jones v. Colvin, No. 15-cv-01900-WHO, 2016 WL 1461945, at *6-7 (N.D. Cal. Apr. 14, 2016) (rejecting plaintiff's claim that ALJ did not give sufficiently specific reasons under Brown-Hunter for discrediting his subjective symptom testimony because, although "the ALJ did not *specifically* address" plaintiff's claims about certain limitations, "her decision as a whole provide[d] adequately specific, clear, and convincing reasons for rejecting [his] subjective testimony about his disabling limitations" (emphasis in original)).

The ALJ identified two clear and convincing reasons for partially rejecting Plaintiff's symptom statements — their inconsistency with objective evidence and with some activities of daily living. (See AR 19, 21-26); Carmickle, 533 F.3d at 1161; Rounds, 807 F.3d at 1006. Although they do not appear in the same place in the decision, there is no requirement that she structure her analysis in any particular format. See, e.g., Lewis v. Apfel, 236 F.3d 503, 513 (9th Cir. 2001) (finding that ALJ did not err by placing support for step-three determination

31

elsewhere in decision).[22]

Accordingly, remand is not warranted on this basis.

## VI.    CONCLUSION

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g),[23] IT IS ORDERED that judgment be entered AFFIRMING the Commissioner's decision, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice.

DATED: September 27, 2019

_____
JEAN ROSENBLUTH
U.S. MAGISTRATE JUDGE

---

[22] Plaintiff also takes issue with the ALJ's failure to discuss his work history as a factor in assessing his credibility. (J. Stip. at 20.)  But "in interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'"  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted); see also Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam).

[23] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."